UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 89 CR 908-28 |
| | ) | |
| MELVIN MAYES | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 89 CR 908-31 |
| | ) | |
| NOAH R. ROBINSON | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In today's order, the court addresses two separate, but related, compassionate release motions [6043, 6068] from Defendants Noah Robinson and Melvin Mayes. Robinson and Mayes were convicted more than twenty years ago for crimes related to their membership in the El Rukn street gang; both received multiple life sentences; and both now seek compassionate release, citing their personal medical conditions. Both Mayes and Robinson are serving multiple concurrent life sentences, including one "old law" sentence—for crimes completed before November 1, 1987 and thus governed by 18 U.S.C. § 4205(g)—and two "new law" life sentences—for crimes completed after November 1, 1987 and thus governed by 18 U.S.C. § 3582(c)(1)(A).

The government objects to both Defendants' motions for compassionate release. The United States argues that neither Robinson nor Mayes is eligible for such relief from their "old law" life sentences because under Section 4205(g), only the Bureau of Prisons (not the inmate himself) can seek such relief. Defendants urge the court to hear the motions and grant relief on the basis that these are "mixed law" cases involving concurrent "old law" and "new law" sentences. In the alternative, Robinson argues that, even if the court finds it cannot grant him compassionate release on his "old law" life sentence, the court should nevertheless enter a compassionate

release order on his "new law" life sentences; Robinson hopes that such a ruling might prompt a more favorable outcome when he seeks relief from the Bureau of Prisons from his "old law" life sentence.

As explained below, the court is bound by precedent holding that Defendants' "old law" sentences are governed by Section 4205(g), meaning that the court is barred from granting relief as to those sentences. Whether the court can consider Defendants' requests for compassionate release on the "new law" life sentences is more complicated. To resolve this question the court directs counsel to provide supplemental briefing on the issue of whether the court may entertain a motion for compassionate release for a "new law" life sentence in a case where the defendant would nevertheless continue to be subject to an "old law" life sentence.

## BACKGROUND

On October 26, 1989, Defendant Robinson and 37 codefendants were indicted and charged with crimes associated with the El Rukn street gang. *See United States v. Henry Andrews*, No. 89 CR 908, Dkt. #1, 360. Robinson was convicted after a jury trial on nine separate counts. (Robinson PSR [6089] at 2.) Judge Zagel of this court sentenced Robinson to five years on one count of interstate travel to commit murder, ten years for witness retaliation, twenty years each for witness tampering and another murder count, and three life sentences, one each for RICO conspiracy, narcotics conspiracy, and the final count of murder, all to be served concurrently. (May 2002 Sentencing [5474] at 1–3.) Importantly, among the three offenses for which he received life sentences, the RICO conspiracy and narcotics conspiracy offenses concluded on March 8, 1989—after 18 U.S.C. § 3582(c)(1)(A) replaced 18 U.S.C. § 4205(g) as the governing compassionate release statute—while the murder offense concluded on April 30, 1985, before the statutory regime changed. (*Id.* at 1; 28 C.F.R. § 572.40.)

Robinson has been incarcerated since his arrest in 1989. (Govt. Robinson Resp. [6088] at 9.) Having completed his five-year and twenty-year sentences (and, although he does not mention it, presumably also the ten-year sentence) (Robinson Reply [6098] at 3), Defendant

2

seeks compassionate release from his life sentences. He cites the COVID-19 pandemic and a number of personal medical conditions, including heart problems, sleep apnea, and a history of a bleeding ulcer and esophageal reflux. (Robinson Mot. [6068] at 6–8.)

Defendant Mayes's story is similar. He too was indicted with 37 co-defendants in October 1989 for crimes associated with the El Rukns. *See United States v. Henry Andrews*, No. 89 CR 908, Dkt. #1, 360. Mayes was ultimately convicted on five counts, including for murder conspiracy and travel to commit murder. (Mayes Sentencing Report [5259].) The court sentenced Mayes to sixty months on the murder conspiracy count, sixty months on the charge of travel to commit murder, and three life sentences, one for racketeering conspiracy, one for narcotics conspiracy, and one for another count of travel to commit murder. (Mayes Sentencing Report; Mot. to Correct Clerical Error [6046].) Mayes was to serve these sentences concurrently. (Mayes Sentencing Report.) Among Mayes's life sentences, the travel to commit murder count garnered an "old law" life sentence (concluding on January 3, 1986), while the racketeering conspiracy and narcotics conspiracy counts garnered "new law" life sentences (concluding on March 9, 1989). (Mot. to Correct Clerical Error; Mayes Sentencing Report.) Mayes, now over sixty years old, has been in custody for some twenty-five years. He asks this court for compassionate release based on a diagnosis of "very severe chronic obstructive pulmonary disease" for which he requires around-the-clock oxygen therapy and "an electric wheelchair for mobility." (Mayes Mot. [6043] at 1–2.)

## **DISCUSSION**

Until passage of the Sentencing Reform Act of 1984 (Pub. L. No. 98-473 § 211, 98 Stat 1837, 1987 (1984)), compassionate release requests were governed by 18 U.S.C. § 4205(g), under which such motions could be filed only by the Bureau of Prisons, not by the prisoner himself. *See, e.g.*, *United States v. Matta-Lopez*, LA CR85-00606 JAK (1), 2020 WL 2128644, at *3–4 (C.D. Cal. May 4, 2020) (denying motion for compassionate release because "a person in custody cannot bring a motion on his or her own behalf with respect to criminal conduct that occurred prior to November 1, 1987. . . The relief requested can only be considered through a motion brought

3

by the BOP.") The 1984 Act repealed Section 4205(g) and replaced it with 18 U.S.C. § 3582(c)(1)(A), effective November 1, 1987. *See* 28 C.F.R. § 572.40. Thus, § 4205(g) would continue to govern any offense completed before November 1, 1987, while § 3582(c)(1)(A) would govern any offense completed thereafter. (*Id.*); *cf. United States v. Stewart*, 865 F.2d 115, 118 (7th Cir. 1988) ("Congress never intended . . . for the [Sentencing Reform Act] to apply to offenses committed prior to November 1, 1987."). In 2018, Congress enacted Section 603(b) of the First Step Act, amending 18 U.S.C. § 3582(c), to expand availability of compassionate release, in part by allowing a court to consider a motion for compassionate release made by the defendant himself, rather than from the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A); *see* Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239 (2018).

Defendants Robinson and Mayes argue that the First Step Act's amendment should be applied to Section 4205(g); that is, they argue that the court is free to grant compassionate release not only from the two "new law" life sentences governed by Section 3582(c)(1)(A), but also from the "old law" life sentence governed by Section 4205(g). At the time they filed their briefs, whether a prisoner serving an "old law" sentence was eligible for compassionate release was an open question. Recently, however, the Seventh Circuit has closed the door to this argument. In *United States v. Jackson*, 991 F.3d 851 (7th Cir. 2021), defendant bank robber sought compassionate release from his life sentence due to the COVID-19 pandemic and personal medical issues. *Id.* at 852. Although he completed the bank robbery underlying his life sentence in May 1986, Jackson argued that the First Step Act of 2018 allows courts to consider motions for compassionate release directly submitted not only by prisoners serving "new law" sentences, but those confined under "old law" sentences, as well. *Id.* at 853. The district court rejected that argument, No. 1:86-cr-00426, Dkt. #117, and the Seventh Circuit affirmed. The Court of Appeals concluded that "the 2018 Act [does not] make[ ] old-law prisoners eligible for release under § 3582(c)(1)." *Jackson*, 991 F.3d at 854. The *Jackson* decision is controlling; the court rejects

Robinson's and Mayes's argument that the First Step Act allows the court to grant compassionate release on his "old law" murder sentence.

Second, Defendants here argue that, regardless of how courts treat defendants who are serving only "old law" sentences, the statute dictates that courts should nevertheless consider compassionate release motions for a person serving an "old law" sentence if that defendant is also serving a "new law" sentence. Neither party has cited authority for this argument, and the court is uncertain any court has addressed it. Mayes contends that allowing courts to consider compassionate release from an "old law" sentences for persons in "mixed" cases such as his is the only interpretation of the statutes that avoids "absurd results." (Mayes Mot. at 11–12.) In particular, Mayes points out that it makes no sense for a court to grant compassionate release on his "new law" RICO conspiracy offense but not his "old law" travel-to-commit-murder offense given that the travel-to-commit-murder offense was actually incorporated in the RICO conspiracy offense as a predicate act. (Mayes Mot. at 13.) In Mayes's view, it would be illogical to conclude that the court has power to grant compassionate release on the less serious offense but not the more serious offense.

The court is not persuaded. For one, the Seventh Circuit—in holding that "old law" offenses remain governed by Section 4205(g)—no doubt considered the fact that some offenses committed before November 1, 1987 were more serious than some offenses committed after November 1, 1987 (just as the opposite is no doubt true). Moreover, Mayes's interpretation of the statutes leads to absurd results, as well. If the court could consider compassionate release under "old law" sentences for defendants with "mixed" sentences but not for defendants with purely "old law" sentences, then consider the defendant who commits two murders—one before November 1, 1987 and one after. If the defendant had committed just the first murder, then he would have received only an "old law" sentence and would be ineligible for compassionate release. But, under Mayes's interpretation of the statutes, a defendant who had also committed a second murder, for which he drew a "new law" sentence, would be in a more favorable position,

5

eligible for compassionate release for both the new law and old law sentences. That outcome is at least as absurd as the one Mayes outlines.[1]

Evidently recognizing the possibility that the court might conclude it has no power to grant compassionate release from his "old law" sentence, Robinson briefly asks the court to proceed to a ruling on the request for compassionate release from his two "new law" life sentences. As Robinson notes, the Bureau of Prisons has calculated that he will become eligible for parole under 18 U.S.C. § 4206(d) in March 2026, when he will have served 30 years less 584 days of earned jail credit.[2] (Robinson Reply at 5 n.3.) But if the court were to reduce his "new law" sentence to time served, such a ruling would be "far from meaningless," he believes, as it "might prompt the Parole Commission to reduce the old law sentence to time served," or it might "prompt [the Bureau of Prisons] to decide Mr. Robinson is deserving of compassionate release and . . . ask the court to reduce the old law sentence." (Robinson Reply at 13–14.) The court is less certain that its ruling would move the Bureau of Prisons and is also concerned that such a ruling would amount

---

[1] Similarly, the court rejects Mayes's contention that the court has "ancillary jurisdiction" over Defendants' "old law" sentences when considering compassionate release for the "new law" sentences. Ancillary jurisdiction "refers to the court's power to hear claims that are closely linked to other claims over which the court's jurisdiction is otherwise secure." *United States v. Wahi*, 850 F.3d 296, 300 (7th Cir. 2017). In particular, it can be applied where the claims in question are "factually interdependent" and such jurisdiction is necessary to "enable a court to function successfully." *Id.* While it is undeniable that the "old law" and "new law" sentences here are factually interdependent, granting ancillary jurisdiction over the "old law" sentences would appear to undermine the Seventh Circuit's ruling in *Jackson*, 991 F.3d at 854, and would again, perversely reward defendants who have committed a crime under the "old law" regime for additionally committing a crime under the "new law" regime.

[2] Some debate exists as to whether, as the Bureau of Prisons has suggested, the 30-year clock ought to have started running at the time of the sentencing date following Robinson's retrial on October 22, 1997, or if, as Robinson suggests, the 30-year clock should have begun five years prior, after his original trial, and thus should have expired sometime around March 2021. (Robinson Mot. [6068] at 13–15.) Regardless, even under Robinson's timeline, the court cannot today grant him release under the "mandatory parole" provision of 18 U.S.C. § 4206(d). That provision does not guarantee Robinson's release at that time; it applies only if the Parole Commission determines at the end of the 30-year period that Robinson "has [not] seriously or frequently violated institution rules and regulations [and] that there is [no] reasonable probability that he will commit any Federal, State, or local crime." 18 U.S.C. § 4206. Robinson has provided no evidence on those requirements.

to an advisory opinion. *Cf. Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1338 (N.D. Ill. 1996) (rejecting a request for a declaratory judgment where the judgment would become relevant only if a number of other judgments came out in a particular way because "[t]he Constitution does not allow a federal district court to issue advisory opinions based on . . . speculation.").

The court is not prepared to make a final decision on this issue. The Seventh Circuit's decision in *Jackson* came down after the briefs were filed in these cases. The parties have, therefore, had no opportunity to address that case or to brief the question of whether a court can consider compassionate release on "new law" life sentences for a defendant who is concurrently serving an "old law" life sentence for which the Bureau of Prisons has not yet sought compassionate release. In Robinson's case, Robinson devoted just one paragraph of his brief to this question, while made no mention of the issue. None of the briefs identifies or addresses case law, if any exists, on this matter. The court will invite the parties to submit supplemental briefs within 21 days.

## **CONCLUSION**

For the foregoing reasons, the court denies Robinson's motion for compassionate release [6068] as to his murder life sentence but withholds judgment as to Robinson's motion for compassionate release from his RICO conspiracy and narcotics conspiracy life sentences. Similarly, the court denies Mayes's motion for compassionate release [6043] as to his travel to commit murder life sentence but withholds judgment as to his racketeering conspiracy and narcotics conspiracy life sentences. The court asks the parties to submit supplemental briefing within 21 days of this order.

ENTER:

Dated: June 7, 2021

_____
REBECCA R. PALLMEYER
United States District Judge