**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | No. 89 CR 908-31 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| **NOAH ROBINSON** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Noah Robinson, an affiliate of the El Rukn street gang, is currently serving two life sentences for his involvement in organized criminal activity, including narcotics distribution and violent crimes. Robinson seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his advanced age, his declining health, and the risks posed by the COVID-19 pandemic. The court grants his request [6068] for the reasons provided below.

## BACKGROUND

On October 26, 1989, Robinson and 37 codefendants were charged by indictment [1] with various crimes arising from their association with the El Rukn gang. (Def.'s Mot. [6068] at 4–5; Gov't's Resp. [6088] at 7.) Robinson was arrested the next day and has been in custody ever since. (Def.'s Mot. at 4.)

In its brief opposing Robinson's motion, the Government extensively details the history of the El Rukn gang and Robinson's involvement with it.[1] (*See* Gov't's Resp. at 2–7.) The El Rukns operated in the Chicago area from the mid-1960s until the late 1980s. (*Id.* at 2.) During that time, the Government recounts, the El Rukns "engaged in a wide variety of organized criminal activity,

---

[1] As the source for its summary of Robinson's criminal conduct, the Government cites what it characterizes as a presentence report prepared after Robinson's 1997 conviction before Judge Zagel. (Gov't's Resp. at 2 n.1.) The exhibit provided by the Government is dated "November 23, 1991" and names Judge Aspen, not Judge Zagel, as the sentencing judge. (*See* Presentence Report, Ex. A to Gov't's Resp. [6089] (sealed).) That information suggests that this document is the presentence report from Robinson's first conviction, which was later overturned. Robinson himself has not contested any aspect of the Government's summary of his criminal conduct, however.

including murders, murder conspiracies and attempted murders, massive distribution of narcotics, aggravated batteries, and witness kidnapping, tampering, and retaliation, including murders and attempted murders." (*Id.*)  Robinson's relationship with the El Rukns began relatively late, in 1983, when he was asked to contribute to a bond fund for Jeff Fort, a longtime leader of the gang. (*Id.* at 4.)  After assisting Fort in this capacity, Robinson helped the El Rukns develop business relationships with several individuals who ran cocaine- and heroin-distribution networks on the East Coast.  (*Id.* at 4–6.)  These connections allowed the El Rukns to "expand their narcotics operations substantially and reap huge profits."  (*Id.* at 6.)  Robinson shared in those profits, having invested some of his own money in the narcotics trade, and he allowed other participants to operate out of his home and a business he owned.  (*Id.* at 4–6.)  In 1985 and 1987, Robinson hired El Rukn hit teams to murder three individuals: Leroy Barber, Robert Aulston, and Janice Denise Rosemond.  (*Id.* at 6; Government's Version, Ex. B to Gov't's Resp. [6090] at 2–3, 4–5 (sealed).)  The first hit was successful; the second was never completed; and the third resulted in severe injury to Rosemond.  (*See* Government's Version at 2–3, 25–29, 31–32.)

Robinson and six codefendants were found guilty at trial in 1991, but those convictions were eventually overturned due to prosecutorial misconduct, and the court ordered a new trial. *See United States v. Boyd*, 833 F. Supp. 1277, 1280–81 (N.D. Ill. 1993), *aff'd*, 55 F.3d 239 (7th Cir. 1995).  At the 1996 retrial, Robinson was found guilty on all seven counts.[2]  (*See* Jury Verdict [4830] (sealed); Gov't's Mot. to Correct the Judgment [5470]; Am. Sentencing Order [5474].)  On October 22, 1997, Judge Zagel of this court ordered concurrent sentences of 10 years in prison for witness retaliation; 20 years for witness tampering; 5 years and 20 years, respectively, for two counts of interstate travel to commit murder; and three life sentences—one for a RICO conspiracy,

---

[2] The Government's response brief overstates the number of counts on which Robinson was found guilty at retrial.  (*See* Gov't's Resp. at 8 (erroneously listing nine counts instead of seven); Robinson Reply [6098] at 2 n.1 (explaining the Government's error).)

another for a narcotics conspiracy, and the third on another charge of travel to commit murder. (Am. Sentencing Order.)

Robinson's motion for compassionate release has been pending since September 2020, and has been supplemented numerous times, as described below. Because the crime underlying Robinson's third life sentence had been committed before November 1, 1987 (i.e., it was an "old law" sentence), this court initially determined that it lacked the statutory authority to grant compassionate release unless the Federal Bureau of Prisons (BOP) made the request. *See United States v. Mayes*, No. 89 CR 908, 2021 WL 2312565, at *2 (N.D. Ill. June 7, 2021) (explaining that Robinson's old-law sentence was governed by 18 U.S.C. § 4205(g), not 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Jackson*, 991 F.3d 851, 852–54 (7th Cir. 2021) (discussing the relationship between these two statutes). This court left open the possibility that it could nevertheless order compassionate release as to Robinson's first and second life sentences—"new law" sentences, for which the underlying criminal conduct did not conclude until after November 1, 1987. *Mayes*, 2021 WL 2312565, at *3–4. The court invited supplemental briefing on this narrow issue. *Id.* at *4.

In several supplemental filings (all unanswered by the Government), Robinson has briefed the new-law issue [6764], provided additional health-related information [6769, 6784, 6818, 6822, 6830], cited recent decisions in ostensibly similar cases [6774], provided news clippings about prosecutorial misconduct in his first trial [6777], reported on conditions in prisons [6795, 6823], and alerted the court to the fact that he was granted parole on his old-law sentence sometime in 2021 [6779, 6780].

The last item is the most significant. The conclusion of Robinson's old-law life sentence renders moot this court's previous conclusion that Robinson is not eligible for compassionate release. *See United States v. Mayes*, No. 89 CR 908, 2022 WL 178203, at *1 (N.D. Ill. Jan. 19, 2022) (explaining this mootness issue with respect to a similarly situated codefendant, Melvin Mayes). The only sentences for which Robinson is currently incarcerated are his two new-law life

3

sentences.[3] Because this means that Robinson's motion for compassionate release is governed solely by 18 U.S.C. § 3582(c)(1)(A), the court can reach the merits of his request without the BOP having approved it. *See Mayes*, 2021 WL 2312565, at *2. The court does so below.

## DISCUSSION

Generally, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Early release may be permitted, however, if "extraordinary and compelling reasons warrant" a reduction. *Id.* § 3582(c)(1)(A)(i). Such a motion for "compassionate release" may be filed by the BOP Director or by a prisoner. *Id.* In resolving a motion by a prisoner, the court must ask whether (1) an "extraordinary and compelling" reason warrants the reduction, and (2) the reduction is appropriate in light of the factors in 18 U.S.C. § 3553(a).[4] *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021) (explaining this two-step analysis).

Section 3582 also says that the court must determine that the sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has not, however, updated its policy statements since the First Step Act amended the statute to allow prisoners to file motions for

---

[3] Robinson has submitted, as an exhibit, a "Notice of Action" from the United States Parole Commission. (*See* Notice of Action, Ex. 1 to Def.'s Add. Supp. Resp. [6780-1].) As was true for Melvin Mayes (one of Robinson's codefendants), Robinson and his counsel reportedly did not receive this document until several months after its date would suggest. (Def.'s Add. Supp. Resp. [6779] at 1–2; Def.'s Add. Supp. Resp. [6780] at 1.) The notice provides, in relevant part, "Parole Effective 4/21/2021 to non-parolable LIFE prison term only ordered by the U.S. District Court." (Notice of Action.) The court finds this language somewhat opaque, but according to Robinson, the notice confirms that he is now serving only his first and second life sentences. (Def.'s Add. Supp. Resp. [6779] at 1–2; Def.'s Add. Supp. Resp. [6780] at 1.) The Government has not contested that assertion.

[4] Prisoners seeking compassionate release must first pursue certain administrative remedies, *see* 18 U.S.C. § 3582(c)(1)(A), but the Government did not dispute Robinson's satisfaction of the exhaustion or timeliness requirements, which Robinson discussed in some detail. (Def.'s Mot. at 1–2.) *See also United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (noting that "the exhaustion requirement in § 3582(c)(1)(A) is an affirmative defense, not a jurisdictional prerequisite, so the government will lose the benefit of the defense if it fails to properly invoke it").

compassionate release on their own. *United States v. Black*, 999 F.3d 1071, 1074 (7th Cir. 2021). The Commission's policy statements are thus not binding when a court considers a prisoner's motion (as opposed to the BOP's motion). *United States v. Rucker*, 27 F.4th 560, 562 (7th Cir. 2022). The Seventh Circuit has nevertheless recognized that the Commission's policy statement in U.S.S.G. § 1B1.13 provides a helpful "working definition of 'extraordinary and compelling reasons.'" *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also Kurzynowski*, 17 F.4th at 759 (noting that "that § 1B1.13 may serve as a guide for district court judges in exercising their discretion"). In keeping with the Seventh Circuit's guidance, the court discusses § 1B1.13 in detail below.

**I.     Extraordinary and Compelling Circumstances**

Robinson is now 80 years old and has been in custody since 1989. He argues that his advanced age and declining health provide an "extraordinary and compelling" basis for compassionate release, particularly given the ongoing COVID-19 pandemic. As summarized by a hired medical expert, Dr. Ryan-Niko Hickman, Robinson's medical history "includes coronary artery disease status post stent placement in 2008, hyperlipidemia (high cholesterol), obstructive sleep apnea being treated with CPAP use, hypertension (high blood pressure), hypertensive retinopathy, angina (chest pain), esophageal reflux with history of bleeding peptic ulcer, peripheral vertigo, neuralgia and neuritis, and hematuria." (Letter from Dr. Ryan-Niko Hickman to James B. Craven III (Aug. 1, 2020), Ex. 2 to Robinson Mot. [6068-2] (hereinafter "Dr. Hickman Report") at 1.) According to Dr. Hickman, several of Robinson's conditions, as well as his age, are factors for increased severity of illness from COVID-19. (*Id.* at 1–2.)

The record also includes anecdotal information about Robinson's declining heath. One submission describes a "disturbing recent pattern" of events that generally involve chest pains, dizziness, falls, and trips to the emergency room. (*See* Def.'s Supp. [6084] at 1–5.) Two letters from Robinson's daughter Nicole Robinson Owens describe additional symptoms that have emerged as her father ages, such as forgetfulness and disorientation with respect to day-to-day

matters. (*See* Letter from Nicole Robinson Owens (Apr. 15, 2020), Ex. to Def.'s Supp. [6084-1]; Email from Nicole Robinson Owens (Dec. 20, 2020), Ex. to Def.'s Reply [6107-1].) In more recent filings, Robinson's attorney has described Robinson's increasing difficulty keeping track of friends and family. (Def.'s Seventh Add. Supp. [6822] at 1–2; Def.'s Ninth Add. Supp. [6830] at 1.)

The Government has responded to some, but not all, of Robinson's arguments. In its initial response brief, the Government focused mainly on the statutory issue of whether 18 U.S.C. § 3582(c)(1)(A) governed Robinson's request given that, at the time of the Government's submission (November 2020), he was still incarcerated on an old-law sentence. (*See* Gov't's Resp. at 14–17.) The Government also argued, in the alternative, that Robinson had not established an "extraordinary and compelling" basis for compassionate release, because he appeared to be in "solidly good health for a person of his age." (*Id.* at 17–19.) Although the statutory issue has since become moot, as noted above, the Government has not reasserted its alternative argument—or made any substantive filing[5]—while Robinson has continued to argue for his release.

As it happens, the court agrees with the Government's alternative argument, at least in part. The medical information that Robinson has presented does not appear to reflect the "wretched" health that he claims. (*See* Def.'s Supp. [6769].) While Robinson may indeed have an "extensive medical history" (Dr. Hickman Report at 1), rare is the 80-year-old who does not. He has repeatedly compared himself to codefendant Melvin Mayes, whose compassionate release motion this court granted earlier this year. *See Mayes*, 2022 WL 178203. But these two defendants' circumstances are substantially different. One doctor estimated that Mayes, who had been diagnosed with a terminal lung disease, "cannot be expected to live longer than a year and

---

[5] The Government's only docket filing since the court's June 2021 decision, *Mayes*, 2021 WL 2312565, is a copy of Robinson's medical and disciplinary records from the BOP [6816], which the court requested in April 2022 [6807].

a half." *Id.* at *2. Another doctor stated that Mayes would be eligible for hospice services upon release. *Id.* Robinson, in contrast, has presented no such bleak prognosis. *See id.*

The court appreciates that the COVID-19 pandemic may be an exigent circumstance, particularly for an elderly inmate like Robinson. Dr. Hickman's report noted various factors, especially Robinson's age and coronary artery disease, that create a heightened risk of severe illness or death if Robinson contracts the virus. (Dr. Hickman Report at 1–2.) Robinson previously stated that his unit at FCI Edgefield shares an HVAC system with the unit where COVID-positive inmates are confined, and at one point he resorted to covering up his own heating vent as a preventive safety measure. (Def.'s Second Add. Supp. [6784] at 1.) More recently, Robinson reported that FCI Edgefield was "on lockdown" due to COVID-19. (Def.'s Fourth Add. Supp. [6795] at 1.) Robinson said that he was confined in unsanitary conditions and in close quarters, unable to shower for eight days. (*Id.*)

The court notes, however, that Robinson has been vaccinated against COVID-19 and received at least one booster dose. (*See* Def.'s Medical and Disciplinary Records [6816] at Medical-00141, -00149, -00161 (sealed) (consent forms for first dose, second dose, and booster dose).) Vaccination may substantially reduce the dangers of the virus, but context is key. *Compare United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (emphasizing that the vaccine significantly reduces the risks of COVID-19 for most prisoners) *with Rucker*, 27 F.4th at 563 (noting that *Broadfield* was decided "before Omicron became the dominant variant in this country (with an increase in breakthrough infections among the fully vaccinated)"). *Rucker* counsels consideration of "individualized arguments and evidence" concerning the risks faced by a prisoner as a result of COVID-19, including arguments and evidence that reasonably account for the changing nature of the crisis and the strength of defenses like vaccination. *See Rucker*, 27 F.4th at 563. Dr. Hickman's report, though helpful, is not dispositive on the issue of whether COVID-19 establishes an "extraordinary and compelling" basis for Robinson's release now, as it

7

was written more than two years ago—and several months before the vaccine was widely available. (*See* Dr. Hickman Report.)

The pandemic aside, it is undisputed that Robinson is quite elderly, is in declining health, and has been incarcerated for a remarkably long time. Each of those factors favors compassionate release. While the Sentencing Commission's policy statements do not limit the court's discretion on this motion, § 1B1.13 has been helpful in evaluating Robinson's request. This section lists circumstances that may constitute "extraordinary and compelling" reasons for granting compassionate release. The first circumstance concerns a defendant's medical condition. In the court's view, Robinson (unlike codefendant Mayes) does not fit comfortably within this section. He has not demonstrated, for example, that any condition or impairment "substantially diminishes" his ability to care for himself within a correctional environment. *See* U.S.S.G. § 1B1.13 application note (1)(A).

The second circumstance, which relates to a defendant's age, is a better fit. The Commission's notes endorse compassionate release where the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* § 1B1.13 application note (1)(B). Robinson is 80 years old, which is elderly by any standard and far beyond the mark of 65. Although the court has not seen evidence that Robinson is gravely or terminally ill, his health does appear to be meaningfully deteriorating as a result of his advancing age. For instance, Robinson's latest medical records show that he has begun using a wheelchair for at least some routine activities. (*See* Def.'s Medical and Disciplinary Records at Medical-00003 (noting that Robinson was "discharged back to [his] housing unit via wheelchair"); *id.* at Medical-00016 (noting that Robinson moves with the "assistance of a

8

wheelchair").)[6] Finally, Robinson has been incarcerated for over 32 years—well beyond the policy statement's 10-year standard. The court therefore concludes that Robinson has demonstrated an extraordinary and compelling basis for release.

## II.   Consistency with 18 U.S.C. § 3553(a) Factors

Next, the court must consider whether releasing Robinson would be appropriate in consideration of the factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *Kurzynowski*, 17 F.4th at 759. These factors include "the nature and circumstances of the offense"; the "history and characteristics of the defendant"; and the need for the sentence to "reflect the seriousness of the offense," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). District courts exercise "considerable discretion" in weighing these factors. *United States v. Saunders*, 986 F.3d 1076, 1077 (7th Cir. 2021).

Robinson was convicted of brutal crimes, but he is 80 years old and has now been in custody for almost 33 years. That is a significant period for the purposes of punishment and general deterrence. *See* 18 U.S.C. § 3553(2)(A)–(B). In the court's view, granting compassionate release to an individual who has served such a lengthy sentence does not undermine the rule of law or make light of Robinson's offenses. *See id.* § 3553(a)(2)(A). The court has also taken note of anecdotal reports that paint a picture of continuing decline in Robinson's memory and mental acuity. (*See, e.g.*, Def.'s Seventh Add. Supp. at 1–2.) In the court's view, such deterioration weakens the justification for the continuing incarceration of an elderly, long-serving defendant like Robinson.

Nor does the court find that Robinson would pose a threat to the public, were he to be released with appropriate restrictions. First, Robinson's disciplinary record from the BOP reflects

---

[6]   Robinson's attorney also asserts that his client "is in a wheelchair now 24/7." (*See* Def.'s Mot. for Compliance with Order [6815] at 1.) He has even offered a list of "13 BOP staffers" who can attest to that fact. (*Id.*)

9

satisfactory conduct while incarcerated, especially in recent years. (*See* Def.'s Medical and Disciplinary Records at Dicipl-000001 to -07.)[7] Most of Robinson's incident reports date to his first decade in prison (i.e., the 1990s); he was cited only six times between 2006 and 2020. (*Id.* at Dicipl-000001 to -02.) The most recent incident was in 2012, when Robinson was cited because he had kept water bottles (which were used for his respirator machine) in an untidy manner. (*Id.* at Dicipl-000001; Def.'s Mot. for Compliance with Order [6815] at 1.) Second, the court takes note of empirical evidence about the significantly lower rates of recidivism among older criminal offenders, especially those beyond 65. (*See* Def.'s Mot. at 11 (discussing how "[t]he propensity to engage in criminal activity declines with age, and is, on average, sharply lower for persons over 70" (quoting *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012))).) *See also, e.g.*, U.S. SENTENCING COMM'N, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (concluding that "[o]lder offenders [are] substantially less likely than younger offenders to recidivate following release.")

The court notes, finally, that Robinson has proposed what appear to be reasonable living conditions for his release. He plans to live in Chicago with one of two daughters who have promised to take care of his medical and other needs. (Def.'s Mot. at 10 & n.5; Letter from Renee Robinson-Madgett (n.d.), Ex. 11 to Def.'s Mot. [6068-2]; Def.'s Supp. at 3–4, 4 n.3; Letter from Nicole Robinson Owens (Apr. 15, 2020); Def.'s Supp. Reply [6716] at 1; Def.'s Second Add. Supp. at 1; Def.'s Fifth Supp. [6797] at 2.)

## **CONCLUSION**

Robinson's motion [6068] is granted. His remaining life sentences are each reduced to time served as of October 27, 2022. The probation office is directed to evaluate the propriety of

---

[7] The misspelling in the Bates-numbering scheme (i.e., the use of "dicipline" in place of "discipline") is not the court's error.

Robinson's proposed living arrangements and to propose appropriate conditions of supervised release as soon as practicable.

ENTER:

Dated: September 9, 2022

_____
REBECCA R. PALLMEYER
United States District Judge